# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 12, 1897.

EX PARTE IN THE MATTER OF TRUST ESTATE OF THE BAXTER ELECTRIC MOTOR CO. OF BALTIMORE CITY.

*J. J. Alexander* for petitioner.
*Gans & Haman* for trustee.

**STOCKBRIDGE, J.—**

On May 17th, 1890, William Baxter, Jr., entered into an agreement with the Baxter Electric Motor Company of Baltimore City, by which he covenanted to assign to the Company inventions thereafter to be made by him, and improvements upon inventions already made, and to occupy the position and discharge the duties of chief electrician for the company, his compensation to be a royalty of 5 per cent. on sales of his patented inventions, with a guaranteed minimum by the Company of $250 a month. There was no time limit in the agreement specifying when the employment should end, the only thing which looks to its termination was the failure of the Company to manufacture the patented articles for a specified length of time, in which event the patents were to revert to Baxter, and probably the agreement terminate, though that is inferential, rather than distinctly set forth in the agreement itself.

Less than a month later, the Baxter Electric Motor Company executed a mortgage to secure certain bonds of the Company, which bonds were marketed and sold at their face value sometime during the year 1892, the dates not clearly appearing from the papers in the case. The company proceeded with its business, meeting its obligations for some time thereafter. The semi-annual interest due upon its bonds in November, 1893, was paid. The guaranteed minimum of $250 per month to Mr. Baxter was paid up to December 17th, 1893, but none after that date. When the Company ceased active operations does not clearly appear, but on the 2nd of November, 1894, the trustee named in the mortgage, took possession of the property. Since that time acting under the powers contained in the mortgage the trustee has sold the property, and this petition is filed upon the part of Mr. Baxter to be paid the ten months salary from December 17th, 1893, to October 17th, 1894, in full, out of the proceeds of the sale under the mortgage, and with a priority over the mortgage bondholders.

This is not a petition filed under the provisions of the insolvent law, by which employees are given certain priorities for salary or wages, because the law does not give in such cases a priority for a length of time claimed in this case. Nor is this a proceeding as against an insolvent corporation, nor is there the distinct allegation of insolvency, though such is probably the fact, but it is an application to the Court to direct the allowance of this claim for ten months wages in full, as being entitled to a preference upon purely equitable grounds.

The entire fund, it must be borne in mind, out of which this payment is now asked to be made, is a fund derived from the sale of mortgaged premises by the trustee named in the mortgage, and a sale made avowedly for the purpose of paying the bonds issued by the company and to secure which the mortgage was given, and in such a condition the rule of law has long been established, that claimants against an insolvent corporation whose claim is not a lien by virtue of any statute are not entitled to payment out of the funds arising from a sale of the property at the instance of prior mortgage bondholders until the bonds are paid.

Jones on Corporation Bonds and Mortgages, 587.

Denniston vs. C. A. & St. L. R. R. Co., 7 Fed. Cases 3800; 4 Biss. 414.

It is apparent that the only theory upon which this petitioner can ask relief of this Court, although it is not distinctly set forth in the petition, is that the corporation is insolvent, because were it not insolvent, he would be limited to his remedy at law. The settled rule with regard to claims being as given above, it is urged that this has been modified by recent decisions of the Courts, following the case of Fosdick vs. Schall in 99 U. S. It is to be noted in this respect, however, that while there has been such departure as regards a certain class of claims, to wit, cases of insolvent railroad corporations, or railroad corporations which, if not insolvent, have nevertheless for supposed prudential reasons been placed in the hands of receivers, Courts have not as yet been disposed to extend the rule beyond the class of cases, in which it originated, namely as applicable to railroads, and the reason for the modification of the rule in these cases, results from the peculiar methods of doing business, by which there is a long interval ordinarily between the service performed and payment made for it, and the fact that these cases have arisen apparently without exception, where the property was in the hands of receivers being administered by the Court.

A corporation is never placed in the hands of a receiver as a matter of strict right, and therefore the Courts have felt warranted in these cases in stretching a supposed equitable principle in favor of the claims of a certain class of creditors beyond the point of any statutory authority. No sufficient reason, however, has been advanced to warrant the Court in departing from the settled line of authority in such cases, and introducing into manufacturing corporations principles which have been recognized and acted upon with regard to a limited class only, such as railroad corporations; in addition to which, in the present case, the fund is not a fund in the hands of receivers, but in the hands of a trustee, and in his hands because of the enforcement of an absolute legal right vested by the mortgage. In as far, therefore, as the claim of the peti-

tioner in this case is sought to be maintained upon the analogy of the railroad cases, the petition must be denied.

But it is further suggested that by reason of the payment of its coupons maturing in November, 1893, there was a wrongful diversion of assets of the company, upon the part of the directors to the benefit of the bondholders, which should make the fund now in the hands of the trustee under the sale for the benefit of the bondholders, liable to this claim.

In 1893 the corporation was engaged in business. It was so far as appears from the papers in this case, manufacturing from day to day the articles, machinery or motors for which it was organized. It had a common fund out of which to meet its liabilities, whether these liabilities were its wages for services performed, or payment for materials purchased, or interest on its bonded indebtedness; it did not have and it was under no obligation to maintain separate and distinct funds from the one of which to pay for its labor, from another to pay for its materials, and from a third the interest of its bonded indebtedness. All ·three as they became due were legal liabilities; all three were payable and paid as they respectively fell due out of the funds which it had in hand. It was under no obligation to set apart a portion of that fund for application to a specific purpose, unless by reason of some corporate agreement that it would do so, and no such corporate agreement can be deduced from the agreement with Mr. Baxter. His agreement with the company was not to perform his services for a lump sum named in the agreement, but for a royalty with a guaranteed monthly minimum which fell due and became payable from year to year, or month to month, as the operations of the company went on, and if the company discharged by payments the annual or monthly amounts to which he was entitled under his contract of May 17th, 1890, he had no further claim against it. It is admitted that the company did so discharge the claims of Mr. Baxter up to the 17th of December, 1893, and therefore he had no claim against it on that date, and payments of indebtedness properly due by the company made prior to that date can not now be assailed as improperly

made or made in fraud of the rights of the petitioner, for it is not even claimed by the petitioner that any of the payments of interest to the bondholders were made subsequently to the 17th of December, 1893. The agreement was a continuing one, it is true, but the amounts due and payable under it became due from time to time, and there does not appear to have been any improper application of funds at or subsequent to the time when the last amount which was paid to the petitioner became due.

It has been urged with much earnestness by counsel for the petitioner, that there is an analogy to be drawn from relative rights of mortgagor or mortgagee with respect to a lease of mortgaged property made anterior to the giving of the mortgage.

But the Court can not so regard it. To grant the contention of the petitioner in this respect would have the effect of giving a contract or agreement, not a lien by statute, and of which a mortgage creditor might or might not have any notice whatever, preference over a class of creditors who are given a clear, statutory lien upon the property, and the effect of such holdings by the Court would be to render entirely uncertain the matter of the security afforded by a mortgage upon specific property, since it would place it in the power of the Courts, by advancing claims of a different character from those secured by the mortgage, to a priority over them, and so entirely wipe out the security of the mortgage indebtedness, and thereby render the holdings of mortgagees, whether they were bonds, as in this case, or in the form of promissory notes, of uncertain value and therefore unmarketable.

It has also been urged that by reasons of the representations made by certain of the bondholders, who were also directors, to the petitioner, he was induced to remain longer than he otherwise would with the company, and that therefore an equity arises in his favor, certainly as against the interest of those particular bondholders. There is nothing to show that these representations were made by all of the bondholders, and certainly those who did not make such representations, or who may not have been aware of the representations, could not be affected by

610

them. If the representations made were false and fraudulent, the petitioner would have a remedy at law against the person or persons making them; but that would not give this Court jurisdiction in the matter; and if they were not false and fraudulent, but made in good faith, still less would they constitute such an equity in favor of the petitioner as entitled him to a lien upon the portion of the fund to which the bondholders would be entitled.

The petition will therefore be dismissed.